IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| FEDERATION OF INDIAN QUARTZ SURFACE INDUSTRY,<br><br>           Plaintiff,<br><br>   v.<br><br>UNITED STATES,<br><br>           Defendant. | Court No. 23-00026 |

**COMPLAINT**

Plaintiff Federation of Indian Quartz Surface Industry ("the Federation") by and through its counsel, hereby alleges and states as follows:

**SUMMARY AND NATURE OF THIS ACTION**

1. Plaintiff the Federation is an association of Indian producers and/or exporters to the United States of quartz surface products.[1] Plaintiff contests aspects of the U.S. Department of Commerce's ("Commerce") *Final Results* for the December 13, 2019 to May 31, 2021 antidumping duty administrative review of the antidumping duty order on quartz surface products from India.

2. In the *Preliminary Results*, Commerce calculated the cash deposit and assessment rates applicable to non-selected companies under review by averaging a *de minimis* zero percent margin and a margin applied entirely pursuant to facts available with an adverse inference. In response to arguments raised by the non-selected companies, Commerce revised its calculation in the *Final Results* and relied on the all-other rate that it calculated in the investigation as the

---

[1] Plaintiff provides a complete list of all Federation members in **Attachment 1**.

1

rate applicable to non-selected companies under review.  However, in the *Final Results*, Commerce unlawfully failed to adjust the non-selected companies' cash deposit and assessment rates to account for the export subsidy offset required by statute.

## JURISDICTION

3. Plaintiff brings this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii).  This action is an appeal of Commerce's *Final Results* in the December 13, 2019 to May 31, 2021 administrative review of the antidumping duty order on quartz surface products from India, Case No. A-533-889.  *Certain Quartz Surface Products From India: Final Results of Antidumping Duty Administrative Review; 2019-2021*, 88 Fed. Reg. 1,188 (Dep't Commerce Jan. 9, 2023) ("*Final Results*"), and accompanying Issues and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review: Certain Quartz Surface Products from India; 2019-2021 (Dec. 30, 2022) ("*Final Results* IDM").

4. This Court has jurisdiction by reason of 28 U.S.C. § 1581(c).

## STANDING

5. Plaintiff the Federation is an association of Indian producers and/or exporters to the United States of quartz surface products.

6. Plaintiff was a party to the December 13, 2019 to May 31, 2021 administrative review conducted by Commerce and participated in the administrative review by filing case and rebuttal briefs.  Therefore, Plaintiff is an interested party pursuant to 19 U.S.C. § 1516a(f)(3) and 19 U.S.C. § 1677(9)(A).  As an interested party that actively participated in the proceeding below, Plaintiff has standing to commence this action under 19 U.S.C. § 1516a(a)(2)(A), 19 U.S.C. § 1516a(d), 28 U.S.C. § 2631(c), and 28 U.S.C. § 1581(c).

## TIMELINESS OF THIS ACTION

7. On January 9, 2023, Commerce published in the *Federal Register* the challenged *Final Results*. *Certain Quartz Surface Products From India: Final Results of Antidumping Duty Administrative Review; 2019-2021*, 88 Fed. Reg. 1,188 (Dep't Commerce Jan. 9, 2023). Plaintiff filed a summons on February 7, 2023 and therefore initiated this appeal within thirty days of publication of the *Final Results* in the *Federal Register* pursuant to Sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Act. 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (B)(iii). This action was therefore timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I), 28 U.S.C. § 2636(c), and U.S. Court of International Trade Rule 3(a)(2). Plaintiff files this complaint within thirty days of the summons pursuant to U.S. Court of International Trade Rule 3(a)(2).

## STATEMENT OF FACTS

8. On June 22, 2020, Commerce published the antidumping duty order on certain quartz surface products from India. *Certain Quartz Surface Products from India and Turkey*: *Antidumping Duty Orders*, 85 Fed. Reg. 37,422 (Dep't Commerce June 22, 2020) ("*Antidumping Duty Order*").

9. On August 3, 2021, Commerce initiated administrative review of the *Antidumping Duty Order*. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 41,821 (Dep't Commerce Aug. 3, 2021). Commerce's period of review for this administrative review is December 13, 2019 to May 31, 2021.

10. On September 28, 2021, Commerce limited its examination of mandatory respondents to two companies out of a total of 57 respondents. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 41,821 (Dep't Commerce Aug. 3, 2021). The two respondents selected were Antique Group ("Antique") and Pokarna Engineered

Stone Limited ("PESL"), which Commerce determined accounted for the largest volume of the subject merchandise from India in accordance with 19 U.S.C. § 1677f-1(c)(2)(B) of the Act and 19 C.F.R. § 351.204(c)(2).  Memorandum to Erin Begnal, Director, Office III, Antidumping and Countervailing Duty Operations from Charles Doss, Int'l Trade Compliance Analysts, Office III, Antidumping and Countervailing Duty Operations, "2019-2021 Administrative Review of Certain Quartz Surface Products from India: Respondent Selection," (Dep't Commerce Sept. 28, 2021) (on record of Case No. A-533-889).

11. On July 8, 2022, Commerce published the *Preliminary Results* in the *Federal Register*.  *Certain Quartz Surface Products From India: Preliminary Results of Antidumping Duty Administrative Review and Partial Rescission of Antidumping Duty Administrative Review; 2019-2021*, 87 Fed. Reg. 40,786 (Dep't Commerce July 8, 2022) ("*Preliminary Results*") and accompanying Decision Memorandum (May 27, 2022) ("*Preliminary Results* Decision Memorandum").

12. In the *Preliminary Results*, Commerce calculated a zero percent dumping margin for PESL and assigned Antique a dumping margin of 323.12 percent based entirely on facts available with an adverse inference.  *Preliminary Results*, 87 Fed. Reg. at 40,878; *Preliminary Results* Decision Memorandum at 8-11.

13. In the *Preliminary Results*, Commerce calculated a 161.56 percent dumping margin for non-selected companies under review, which included members of The Federation. Commerce calculated the 161.56 percent dumping margin for non-selected companies by averaging the zero percent dumping margin of PESL with the 323.12 percent dumping margin assigned to Antique.  *Preliminary Results*, 87 Fed. Reg. at 40,878; *Preliminary Results* Decision Memorandum at 12.

14. On August 17, 2022, the Federation submitted its case brief. *See* Letter from Morris, Manning & Martin LLP to Sec'y Commerce, "Quartz Surface Products from India, Case No. A-533-889: Federation of Indian Quartz Surface Industry's Case Brief," (Aug. 17, 2022) ("The Federation's Case Brief").

15. In its case brief, the Federation argued that it was unreasonable for Commerce to apply an all-others rate of 161.56 percent to the non-selected companies under review because it was uncorroborated by record evidence and did not reasonably reflect non-selected companies' potential dumping margins. The Federation's Case Brief at 4-9. The Federation argued that Commerce should apply the 3.19 percent all-others rate from the investigation to the non-selected companies in the *Final Results*. Commerce has applied the all-others rates from investigations in other similar circumstances where selected companies' rates are *de minimis* or based entirely on facts available with adverse inferences. The Federation's Case Brief at 9-10.

16. On January 9, 2023, Commerce published its *Final Results*. In the *Final Results*, Commerce determined that the 161.56 percent *Preliminary Results* rate was not reasonably reflective of the non-selected companies' potential dumping margins based on the history of rates found pursuant to the *Antidumping Duty Order*, which have ranged from 2.67 to 5.15 percent. *Final Results*, 88 Fed. Reg. at 1,189; *Final Results* Decision Memorandum at Comment 5. Accordingly, Commerce assigned the 3.19 percent all-others rate that it calculated in the investigation to the non-selected companies under review.

17. Section 772(c) of the Tariff Act of 1930, as amended, directs that the price used to establish export price and constructed export price "shall" be increased by the amount of any countervailing duty imposed on the subject merchandise to offset an export subsidy. 19 U.S.C. § 1677a(c). The purpose of the export subsidy offset adjustment is "to avoid the double

application of duties" because the statute presumes that the subsidy contributed to lower priced sales of subject merchandise in the United States. *Jinko Solar Co., Ltd. v. United States*, 961 F.3d 1177, 1182 (Fed. Cir. 2020). Pursuant to the statutory directive, Commerce applies adjustments to account for export subsidies in antidumping duty investigations and administrative reviews. *See Stainless Steel Flanges From India: Final Results of Antidumping Duty Administrative Review; 2018-2019*, 86 Fed. Reg. 47,619 (Dep't Commerce Aug. 26, 2021).

18. In the countervailing duty investigation of certain quartz surface products from India, Commerce found an all-others export subsidy rate of 2.17 percent. *Certain Quartz Surface Products From India: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances, In Part*, 85 Fed. Reg. 25,398 (Dep't Commerce May 1, 2020).

19. When determining the cash deposit rate in the antidumping duty investigation, Commerce adjusted the 3.19 percent all-others rate by the amount of export subsidies countervailed in the companion countervailing duty investigation, 2.17 percent. *Certain Quartz Surface Products From India: Final Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances*, 85 Fed. Reg. 25,391, 25,393 (Dep't Commerce May 1, 2020). As a result, Commerce applied a cash deposit rate, adjusted for the statutory subsidy offset, of 1.02 percent. *Id.* at 25,392.

20. In the *Final Results* of this administrative review, Commerce applied the 3.19 weighted-average dumping margin previously calculated as the all-others dumping margin in the antidumping duty investigation as the final dumping margin for non-selected companies. *Final Results*, 88 Fed. Reg. at 1,189. Unlike in the antidumping duty investigation, however, Commerce did not adjust the 3.19 percent dumping margin to offset the previously determined

export subsidies pursuant to Section 772(c). *Id.* Commerce also determined that the cash deposit rate applicable to the non-selected companies would be the equal to the 3.19 percent dumping margin without adjusting the cash deposit rate to account for export subsidies. *Id.* at 1,190. As a result, the 3.19 cash deposit and assessment rates applicable to non-selected companies in the *Final Results* both include export subsidies that the statute presumes contributed to the lower priced sales of subject merchandise in the United States. *Jinko Solar*, 961 F.3d at 1182.

21. Also in the *Final Results*, Commerce continued to apply the 1.02 percent cash deposit rate from the investigation, which equals the 3.19 percent dumping margin adjusted by the 2.17 percent export subsidy, to all-others companies that were not subject to this administrative review. *Final Results*, 88 Fed. Reg. at 1,190.

22. On January 9, 2023, Arizona tile, LLC, M S International, Inc., and PNS Clearance LLC ("the Importers") filed a ministerial error allegation regarding the *Final Results*. The Importers argued that Commerce failed to adjust the non-selected companies' cash deposit and assessment rates by the export subsidy offset of 2.17 percent as required by Tariff Act of 1930, as amended. Letter from Hogan Lovells US LLP to Sec'y Commerce, "Quartz Surface Products from India: Ministerial Error Comments on Final Results and Comments on Draft Customs Instructions of Arizona Tile, LLC; M S International, Inc.; and PNS Clearance LLC," (Jan. 9, 2023) (on record of Case No. A-533-889) (citing 19 U.S.C. §1677a(c)) ("Ministerial Error Allegation"). The Importers argued that, pursuant to its practice, Commerce has adjusted the cash deposit and assessment rates for non-selected companies in other cases to account for the export subsidy offset, and that Commerce intended to do so in the *Final Results* when it stated it would "pull forward" the all-others rate from the investigation. Ministerial Error

Allegation at 2-7. Thus, the Importers claimed that the all-others rate from the original investigation was not properly copied and duplicated into the *Final Results* of this review because the non-selected companies' rate does not include the export subsidy offset.

24. 23. On January 24, 2023, Commerce issued its decision regarding the Ministerial Error Allegation. Memorandum from David Lindgren, Program Manager of AD/CVD Operations Office III to Erin Begnal, Director of AD/CVD Operations Office III, "Antidumping Duty Administrative Review of Certain Quartz Surface Products from India: Allegation of Ministerial Error," (Dep't Commerce Jan. 24, 2023) (on record of Case No. A-533-889) ("Ministerial Error Decision Memorandum"). Commerce determined that the allegation by the Importers did not constitute a ministerial error because is not an unintentional error defined by 19 C.F.R. § 351.224(f). Commerce noted that, in the *Final Results*, it made no statements of intent to adjust for export subsidies, and that parties could have raised the export subsidy offset adjustment in case briefs but did not do so. Ministerial Error Decision Memorandum at 4.

24. This appeal followed.

## STATEMENT OF CLAIMS

25. This Court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1).

26. The *Final Results* are unsupported by substantial evidence and are otherwise not in accordance with law in the following respects:

## Count One

27. Paragraphs 1 to 26 are incorporated by reference.

28. Commerce has a statutory obligation to adjust cash deposit and assessment rates

to take export subsidies into account pursuant to Section 772(c) of the Tariff Act of 1930, as amended.  19 U.S.C. §1677a(c).  The cash deposit and assessment rates that Commerce applied to the non-selected companies in the *Final Results* were based on the all others dumping margin calculated in the antidumping duty investigation before the adjustment to account for export subsidies and therefore double count export subsidies that the statute requires to be offset.  Thus, the *Final Results* cash deposit and assessment rates fail to apply the export subsidy offset required by statute.  Commerce's failure to apply the export subsidy offset from the all-others' cash deposit and assessment rates is not supported by substantial evidence, and is otherwise thus contrary to law.

## Count Two

29. Paragraphs 1 to 28 are incorporated by reference.

30. Commerce's established practice is to implement the statutory requirement to account for export subsidies by reducing the amount of the dumping margin calculated in a final less than value determination or administrative review by the amount of any export subsidy determined in a countervailing duty determination applicable to the same merchandise.  Commerce's failure to apply the export subsidy offset from the all-others' cash deposit and assessment rates constituted a ministerial error that should have been corrected by Commerce pursuant to 19 U.S.C. § 1673d(e).  Commerce's failure to exercise its authority to correct the dumping margin calculated for non-selected companies as a ministerial error is not supported by substantial evidence, and is otherwise contrary to law.

## **DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Hold Commerce's *Final Results* unsupported by substantial evidence and otherwise not in accordance with law;

b. Remand the *Final Results* to Commerce for a redetermination consistent with the judgment and findings of this Court; and

c. Grant such other relief as the Court shall deem just and proper.

    Respectfully submitted,

    /s/ Julie C. Mendoza
    Julie C. Mendoza
    Donald B. Cameron
    R. Will Planert
    Brady W. Mills
    Mary S. Hodgins
    Edward J. Thomas III
    Jordan L. Fleischer
    Nicholas C. Duffey

    **MORRIS MANNING & MARTIN LLP**
    1401 Eye Street NW, Suite 600
    Washington, D.C. 20005

    *Counsel to Plaintiff Federation of Indian Quartz Surface Industry*

Dated: February 27, 2023

# ATTACHMENT 1

## LIST OF MEMBERS OF
## THE FEDERATION OF INDIAN QUARTZ SURFACE INDUSTRY

1. Antique Marbonite Private Limited
2. Antique Granito Shareholders Trust
3. Asian Granito India Ltd
4. Shivam Enterprises
5. Prism Johnson Limited
6. ARO Granite Industries Limited
7. Argil Ceramics
8. Baba Super Minerals Pvt. Ltd.
9. Camrola Quartz Limited
10. Cuarzo
11. Divyashakti Granites Limited
12. Esprit Stones Pvt., Ltd.
13. Glowstone Industries Private Limited
14. Hi Elite Quartz LLP
15. Inani Marbles and Industries Ltd.
16. International Stones India Private Limited
17. Keros Stone LLP
18. Mahi Granites Private Limited
19. Malbros Marbles & Granites Industries
20. Marudhar Rocks International Pvt. Ltd.
21. Mountmine Imp. & Exp. Pvt., Ltd.
22. Pacific Industries Limited
23. Pacific Quartz Surfaces LLP
24. Paradigm Granite Pvt., Ltd.
25. Paradigm Stone India Private Limited
26. Pelican Quartz Stone
27. Rocks Forever
28. Rose Marbles Ltd.
29. Satya Exports
30. Southern Rocks and Minerals Private Limited
31. Sunex Stones Private Ltd.
32. Safayar Ceramics Private Ltd.
33. Tab India Granites Pvt., Ltd.
34. Chaitanya International Minerals LLP
35. Colors of Rainbow
36. Hilltop Stones Pvt., Ltd.